## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANTHONY T. ROBINSON,

      Plaintiff,

v.

CAPITAL ONE BANK (USA), N.A.,

      Defendant.

Case No. 19-2275-DDC-KGG

## MEMORANDUM AND ORDER

Plaintiff Anthony T. Robinson has filed a Second Amended Complaint in his class action lawsuit, alleging violations of the Fair Credit Reporting Act ("FCRA") against defendant Capital One Bank (USA), N.A. (Doc. 26). Defendant has filed a Motion to Dismiss Plaintiff's Second Amended Complaint, Dismiss Class Claims for Lack of Personal Jurisdiction, and Strike Plaintiff's Class Allegations (Doc. 28). Plaintiff responded (Doc. 37) and defendant has replied (Doc. 39). For reasons explained below, the court grants defendant's motion in part, denies it in part, and declines to reach the remaining requests in his motion because its other rulings make them moot.

### I.    Factual Allegations

The following facts come from the Second Amended Complaint (Doc. 26) and the court views them in the light most favorable to plaintiff. *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotations marks omitted)).

In June 2009, plaintiff closed an account with HSBC Bank with a zero balance. Doc. 26 at 2 (Second Am. Compl. ¶¶ 14–15). Plaintiff always had made timely payments on the account.

*Id.* at 3 (Second Am. Compl. ¶ 16). In 2012, defendant purchased the account from HSBC Bank. *Id.* (Second Am. Compl. ¶ 17). It became the owner and servicer of plaintiff's closed account. *Id.* Several years later, defendant acquired or used plaintiff's Experian credit report on 14 dates between April 2017 and February 2018. *Id.* (Second Am. Compl. ¶ 18). These inquiries—called "pulls" or "credit pulls"—were not listed in plaintiff's Trans Union or Equifax consumer reports and Experian did not label them as "promotional pulls." *Id.* (Second Am. Compl. ¶ 19). Plaintiff "is informed and believes" that defendant certified these Experian consumer reports for the purpose of an "account review." *Id.* (Second Am. Compl. ¶ 20). At the time of these 2017 and 2018 credit pulls, plaintiff was not involved in any credit transaction with defendant. *Id.* at 4 (Second Am. Compl. ¶ 24). He never consented to these credit pulls. *Id.* (Second Am. Compl. ¶ 25). Plaintiff had neither applied for employment with defendant nor did he intend to "have any interaction with Defendant in connection with insurance." *Id.* (Second Am. Compl. ¶¶ 26–27).

Defendant's regular practice is to acquire consumer reports from a consumer reporting agency even though the consumer has paid any alleged debt or balance to defendant. *Id.* (Second Am. Compl. ¶ 30). The reviews defendant conducted on plaintiff's account indicate that defendant's process for acquiring and using consumer reports is automated. *Id.* (Second Am. Compl. ¶ 31). This automated process results in a pattern and practice of defendant acquiring or using putative class members' consumer reports on a periodic basis. *Id.* (Second Am. Compl. ¶ 32). Defendant's "regular practice" is to acquire or use consumer reports from a consumer reporting agency for consumers who defendant once had a consumer-creditor relationship, but no longer does. *Id.* at 5 (Second Am. Compl. ¶ 33).

II.　　**Defendant's Motion to Dismiss**

Defendant has moved under Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6), and 12(f) to dismiss plaintiff's Second Amended Complaint with prejudice.  Doc. 28.  Defendant asserts that plaintiff has failed to plead an injury-in-fact sufficient to establish standing and has failed to state a FCRA claim for which the court can grant relief.  As for the class allegations, defendant asserts that the court lacks personal jurisdiction over defendant for the claims of class members residing outside Kansas, and asserts that the court should strike plaintiff's class allegations.

Article III of the Constitution demands that the court first consider the issue of subject matter jurisdiction.

**A.  Subject Matter Jurisdiction**

Defendant seeks dismissal of plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Defendant contends plaintiff's Second Amended Complaint fails to allege that he sustained a concrete injury sufficient to confer standing under Article III.  Doc. 29 at 17.

**1.  Legal Standard**

The Federal Rules of Civil Procedure permit a defendant to move to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  Federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. §§ 1331–32.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495

3

F.2d 906, 909 (10th Cir. 1974) (citation omitted).  Since federal courts are courts of limited jurisdiction, the party invoking federal jurisdiction bears the burden to show that it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Kinney v. Blue Dot Servs.*, 505 F. App'x 812, 814 (10th Cir. 2012) (explaining that the "court may not assume that a plaintiff can establish subject matter jurisdiction; it is the plaintiff's burden to prove it"). Standing to sue is elemental to subject matter jurisdiction.  The court thus must resolve this threshold question before expressing any opinion about a case's substance.  *See Rivera v. IRS*, 708 F. App'x 508, 513 (10th Cir. 2017) ("Under Article III of the Constitution, standing is a prerequisite to subject matter jurisdiction that [courts] must address, *sua sponte* if necessary, when the record reveals a colorable standing issue." (citing *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012))).

> ## 2.  Discussion
>
> ### a.  Standing Requirements

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  To present a case or controversy under Article III, a plaintiff must establish that he has standing to sue.  *Id.* (citations omitted).  The standing doctrine developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood" and its application "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citations omitted).

Article III standing requires the plaintiff to demonstrate:  (1) an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

4

imminent, not conjectural or hypothetical[;]" (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[;]" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted). At the pleading stage, general factual allegations can carry plaintiffs' burden to establish the elements of Article III standing because the court must "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "Each plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). "At bottom, the gist of the question of standing is whether [plaintiffs] have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citation and internal quotation marks omitted).

At the "pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of Article III standing. *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). But general factual allegations are sufficient to carry plaintiffs' burden of establishing those elements because the court must "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

### b.  "Injury-in-Fact" Under *Spokeo*

"To establish injury in fact, a plaintiff must show that he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).  In *Spokeo*, the Supreme Court considered whether a plaintiff had standing to bring a FCRA action where he alleged that defendant Spokeo had disseminated incorrect information about plaintiff via its "people search engine" and thus violated various statutory requirements that the FCRA imposes on consumer reporting agencies.  *Id.* at 1545–46. In holding that the court below failed to consider adequately whether the alleged injury was concrete, the Supreme Court noted that a concrete injury must be a real injury that actually exists, but explained that the term "concrete" is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the Court has] confirmed in many of [its] previous cases that intangible injuries can nevertheless be concrete."  *Id.* at 1546, 1548–49. But the Supreme Court also cautioned that, in the FCRA context, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.* at 1549.  Instead, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id.*; *see also Ensminger v. Credit Law Ctr., LLC*, No. 19-2147-JWL, 2019 WL 4341215, at *4 (D. Kan. Sept. 12, 2019) (Lungstrum, J.) (reciting framework to apply when considering an intangible injury caused by a statutory violation (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (additional citations omitted))).  The "doctrine of standing derives from the case-or-controversy requirement, and . . .

that requirement in turn is grounded in historical practice," so "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc.*, 136 S. Ct. at 1549 (citation omitted).  And "Congress is well positioned to identify intangible harms that meet minimum Article III requirements . . . ." *Id.*

With *Spokeo*'s guidance, the court turns to the allegations at issue here.  It considers whether plaintiff alleges a harm sufficiently concrete to satisfy the requirements of Article III.

### c.  Plaintiff's Alleged Harm:  Invasion of Privacy

Plaintiff alleges that defendant invaded his privacy by accessing or using plaintiff's consumer files, profiles, or reports without a permissible purpose or authorization under the FCRA.  Doc. 26 at 8 (Second Am. Compl. ¶¶ 52–56).  The parties agree this invasion of privacy is the sole injury that plaintiff alleges.  *See* Doc. 37 at 14–16 (Mem. in Opp.) (focusing the harm issue solely on invasion of privacy); Doc. 39 at 11 (Reply) ("Plaintiff's Response confirms he is not alleging that the credit inquiries impacted his credit score, or that they caused him to be denied credit, or that any third party was aware of [defendant's] credit inquiries, or that [defendant] shared his information with anyone else." (first citing Doc. 37 at 14–15; then citing Doc. 26 at 2, 8 (Second. Am. Compl. ¶¶ 5, 57))).  Plaintiff never alleges that the credit inquiries affected his credit score, caused a creditor to deny him credit, made a third party aware of credit inquiries, or that defendant shared this information with anyone else.  *See generally* Doc. 26 (Second Am. Compl.); *see also* Doc. 37 at 14–16.

Defendant asserts that in the context of FCRA claims, the invasion of privacy that an improper credit inquiry inflicts is not an injury concrete enough to qualify as an injury-in-fact essential to Article III standing.  Doc. 29 at 17.  Plaintiff disagrees.  He asserts that although he

sustained no tangible harm from the unlawful credit inquiries, the invasion of privacy he

sustained due to defendant's alleged FCRA violation nonetheless qualifies as an injury-in-fact

for purposes of Article III standing.  Doc. 37 at 14–17.

The court now reviews the way that the Circuits have analyzed this FCRA standing

question, post-*Spokeo*.

### d.  Lower Courts on the Concreteness of Privacy Harms Under FCRA

In the wake of *Spokeo*, there has been "little consistency in the lower court cases

addressing the question of standing to bring FCRA claims involving the unauthorized access of a

plaintiff's credit information.  Appellate guidance is scarce."  *Browner v. Am. Eagle Bank*, 355

F. Supp. 3d 731, 733 (N.D. Ill. 2019).  The Tenth Circuit has not yet ruled on the precise

question.

The closest Tenth Circuit case to the issue presented here is *Kansas Natural Resource*

*Coalition v. United States Department of Interior*, 971 F.3d 1222 (10th Cir. 2020) (2-1).  It is not

a FCRA case and arises from different factual circumstances, but the Circuit's recently-issued

opinion nonetheless provides insight about the outer limits of injury-in-fact after *Spokeo*.  *Kansas*

*Natural Resource Coalition* asked whether a federal agency's failure to comply with the

Congressional Review Act's (CRA) prescribed agency rulemaking procedures inflicted an injury

concrete enough to meets the demands of the standing doctrine.  *See id.* at 1231–33.  Plaintiff

alleged that the defendant Department of the Interior failed to submit its "PECE Rule" properly

to Congress in accordance with the CRA.  *Id.* at 1229.  Plaintiff alleged harm in the form of a

lack of confidence in the lawful effect of the agency's rule.  *Id.* at 1231–32.  Our Circuit held that

plaintiff's alleged injury was not an injury sufficiently concrete for the purposes of Article III

standing.  *Id.* at 1231–33.  The Tenth Circuit reasoned that the statute the defendant allegedly

violated—the CRA's requirement that agencies submit their rules to Congress—was "designed

to facilitate Congress's oversight of the executive branch" and thus unlike "instances where a

procedural right exists—or was created—to vindicate an individual's concrete interest." *Id.* at

1232–33. "And even if the CRA's reporting requirement were designed to protect third parties

with an interest in agency rules, KNRC would still need to allege an otherwise cognizable

concrete injury." *Id.* at 1233 (citing *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir.

2016)); *see also id.* at 1233 n.5 (distinguishing cases finding concrete injuries based on

procedural errors). Plaintiff's theory of injury-in-fact thus could not "be shoehorned into the

body of precedent where courts have found standing to assert procedural rights available at

common law or created by Congress." *Id.* at 1232 (citing *Spokeo*, 136 S. Ct. at 1549).

While the Circuit's reasoning in *Kansas Natural Resources Coalition* provides guidance

about evaluating intangible harms, it does not itself provide an obvious answer to the standing

issue that this case presents.

There are two competing bodies of caselaw on the FCRA injury-in-fact issue presented

here. One group of cases, favored by defendant, concludes that invasions of privacy due to

FCRA violations are insufficient on their own to constitute a concrete injury.[1] The other group

---

[1]      *Doak v. Capital One, N.A.*, No. 5:18-cv-07102-EJD, 2019 WL 4645162, at *4 (N.D. Cal. Sept. 24, 2019) (granting motion to dismiss for lack of standing because plaintiff lacked a concrete injury where he alleged only that defendant's "soft pulls" of his credit information violated his privacy interests and did not affect or disseminate his credit score); *Oneal v. First Tenn. Bank*, No. 4:17-CV-3-TAV-SKL, 2018 WL 1352519, at *6–10 (E.D. Tenn. Mar. 15, 2018) (granting motion to dismiss for lack of standing where plaintiff alleged invasion of privacy due to violation of § 1681b because "[a]bsent an allegation that defendant used or disseminated [plaintiff's] credit report in any harmful way—or otherwise exposed this information to a substantial risk of access by others—plaintiff has alleged an injury that is merely 'abstract,' rather than 'de facto.'" (internal citation and citation omitted)); *Bultemeyer v. CenturyLink, Inc.*, No. CV-14-2530-PHX-SPL, 2017 WL 634516, at *2 (D. Ariz. Feb. 15, 2017), *rev'd and remanded*, 788 F. App'x 558 (9th Cir. 2019); *Dilday v. Directv, LLC*, No. 3:16CV996-HEH, 2017 WL 1190916, at *3–4 (E.D. Va. Mar. 29, 2017) (dismissing FCRA claim for lack of standing where plaintiff "failed to comply with the Court's order to brief the issue of standing" because FCRA did not codify a common law tort of invasion of privacy); *Smith v. Ohio State Univ.*, 191 F. Supp. 3d 750, 757 (S.D. Ohio 2016) (granting motion to dismiss for lack of standing because plaintiffs alleging invasion of privacy "admitted

of cases, some of which, plaintiff asserts, offer the better view, conclude that an invasion of privacy is a concrete harm and is not what *Spokeo* described as bare procedural harm. [2]  The dissensus across the federal courts on FCRA standing issues like this one is no great surprise. Questions about concreteness of intangible harms from statutory violations arise from a larger standing puzzle that one scholar described as "one of the hardest questions in modern federal courts doctrine."  William Baude, *Standing in the Shadow of Congress*, 2016 Sup. Ct. Rev. 197, 212 (2016).  Another scholar concluded that "[p]rocedural standing is a riddle wrapped in a mystery inside the enigma that is Article III standing."  Jon Romberg, *Trust the Process: Understanding Procedural Standing Under Spokeo*, 72 Okla. L. Rev. 517, 522 (2020).

---

that they did not suffer a concrete consequential damage as a result of [defendant's] alleged breach of the FCRA" and thus lacked an injury-in-fact); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting plaintiff's argument that "data breach has caused a loss of privacy that constitutes an injury in fact" because plaintiff had "not identified any potential damages arising from such a loss and thus fail[ed] to allege a 'concrete and particularized injury'" (citation omitted)); *Gubala v. Time Warner Cable, Inc.*, No. 15-CV-1078-PP, 2016 WL 3390415, at *1, 4 (E.D. Wis. June 17, 2016), *aff'd*, 846 F.3d 909 (7th Cir. 2017) (granting motion to dismiss for lack of standing where plaintiff alleging invasion of privacy due to violation of Cable Communications Policy Act failed to allege that he had "suffered a *concrete* injury as a result of the defendant's retaining his personally identifiable information."); *Groshek v. Time Warner Cable, Inc.*, No. 15-C-157, 2016 WL 4203506, at *2–3 (E.D. Wis. Aug. 9, 2016), *aff'd*, 865 F.3d 884 (7th Cir. 2017) (granting motion to dismiss plaintiff's FDCPA claim for lack of standing where plaintiff alleged only an invasion of privacy that the court deemed insufficient to constitute concrete harm).

[2]      *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019) (holding that a plaintiff "has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute, regardless whether the credit report is published or otherwise used by that third-party."); *Firneno v. Radner Law Grp., PLLC*, No. 2:13-cv-10135, 2016 WL 5899762, at *4 (E.D. Mich. Sept. 28, 2016) (holding that the alleged unauthorized access of private credit information satisfies the concreteness required for Article III standing because the "right to privacy is 'more substantive than procedural' such that the alleged violation of it is a concrete harm"); *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 874–75 (W.D. Tex. Aug. 31, 2016) (denying motion to dismiss for lack of standing because "[c]onsidering this history and Congress's judgment, the Court finds an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements"); *Witt v. Corelogic Saferent, LLC*, 2016 WL 4424955, at *11–12 (E.D. Va. Aug. 18, 2016) (denying motion to reconsider Mem. Op. denying defendants' motion to dismiss count for lack of standing, concluding that "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue.").

After carefully considering the cases defendant identifies, *see* Doc. 29 at 15; Doc. 39 at 11–12, those that plaintiff cites, *see* Doc. 37 at 15–16, and others, including several cases decided since the parties briefed this issue,[3] the court predicts that the Tenth Circuit, if presented with the narrow issue presented by this motion, would join the courts applying the reasoning outlined in cases like *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019).  Although these cases come from outside the Tenth Circuit and do not bind our court, the court finds their reasoning persuasive given the Supreme Court's guidance in *Spokeo* and our Circuit's recent standing cases.  *See, e.g.*, *Kansas Nat. Res. Coal. v. United States Dep't of Interior*, 971 F.3d 1222, 1232–33 & n.5 (10th Cir. 2020) (discussing procedural rights and concreteness).

In *Nayab*, the Ninth Circuit first encountered the question "whether a consumer suffers a concrete Article III injury in fact when a third-party obtains her credit report for a purpose not authorized by the FCRA . . . ."  *Nayab*, 942 F.3d at 487.  The plaintiff had filed suit after discovering that defendant "had made several inquiries on her Experian credit report."  *Nayab v. Capital One Bank, N.A.*, No. 3:16-CV-3111-CAB-MDD, 2017 WL 2721982, at *1 (S.D. Cal. June 23, 2017), *rev'd and remanded sub nom. Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019).  Plaintiff alleged that defendant's inquiries lacked a permissible purpose and

---

[3]        *See, e.g.*, *Kansas Nat. Res. Coal.*, 971 F.3d at 1232–33 & n.5; *Daniel v. Concord Advice, LLC.*, No. 819CV02978T02SPF, 2020 WL 2198204, at *3 (M.D. Fla. May 6, 2020) (denying motion to dismiss based on standing because "the FCRA conferred a substantive right and an allegation of infringement on that right is a concrete injury"); *Forbes v. Concord Advice, LLC*, No. 8:19-CV-2980-T-33CPT, 2020 WL 3250232, at *4 (M.D. Fla. Apr. 21, 2020) (denying motion to dismiss for lack of standing where plaintiff sufficiently alleged an injury in fact because "a party who uses or obtains a consumer's credit repo[r]t without a permissible purpose in violation of Section 1681b(f) invades a substantive statutory right, the very invasion of which is a concrete injury."); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1341 (N.D. Ga. 2020) (overruling defendant's objection to the Magistrate Judge's recommendation that the court dismiss the case for lack of standing where alleged unauthorized disclosure of credit information to defendant "amount[ed] to an invasion of privacy, which is the type of injury that Congress sought to protect through the FCRA."); *Browner v. Am. Eagle Bank*, 355 F. Supp. 3d 731, 735 (N.D. Ill. 2019) (denying motion to dismiss for lack of Article III standing because "plaintiff's allegation, that defendant accessed her credit report . . . without her consent and with no legitimate business reason to do so, adequately alleges a concrete injury sufficient to confer standing under *Spokeo*.").

thus violated FCRA.  *Id.*  Plaintiff alleged an invasion of privacy, but did "not allege any injury as a result of the alleged invasion of privacy."  *Id.* at *2.  She "merely allege[d] that because [defendant] pulled her credit report without a permissible purpose under the FCRA, she was injured."  *Id.*  The district court concluded that plaintiff's alleged privacy injury was "insufficient to demonstrate Article III standing because even if [defendant's] credit inquiries were impermissible under the FCRA, absent disclosure to a third party or an identifiable harm from the statutory violation, there is no privacy violation."  *Id.* at *3 (citation and quotation marks omitted).

On appeal, the Ninth Circuit reversed.  *Nayab*, 942 F.3d at 499.  It concluded that plaintiff indeed had "standing to pursue her FCRA claim based on [defendant's] alleged violation of 15 U.S.C. § 1681b(f)(1)."  *Id.* at 490.  More precisely, it held that plaintiff "has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute, regardless whether the credit report is published or otherwise used by that third-party."  *Id.* at 493.  The court gave four reasons:  (1) "obtaining a credit report for a purpose not authorized under the FCRA violates a substantive provision of the FCRA[;]" (2) the Ninth Circuit had "previously found the invasion of the interest at issue—the right to privacy in one's consumer credit report—confers standing[;]" (3) historical practice supports a finding of standing because the "harm attending a violation of § 1681b(f)(1) of the FCRA is closely related to—if not the same as—a harm that has traditionally been regarded as providing a basis for a lawsuit . . . [;]" and (4) "the judgment of Congress further supports a finding of standing."  *Id.* at 490–92.

The facts alleged and issues now before the court are quite similar to *Nayab*.  Ms. Nayab alleged that she sustained an invasion of privacy injury when the defendant, Capital One,

violated the FCRA by pulling her credit report without a permissible purpose. *Nayab*, 2017 WL 2721982, at *2–3. Here, plaintiff alleges that he sustained an invasion of privacy injury when defendant Capital One violated the FCRA by pulling his Experian credit report without a permissible purpose. Doc. 26 at 3, 8 (Second Am. Compl. ¶¶ 18, 22–23, 56). The court is unpersuaded by defendant's assertion that *Nayab* is inapplicable or distinguishable. *See* Doc. 39 at 12–13 (citing *Nayab*, 942 F.3d at 490). The factual differences defendant identifies did not factor into the Ninth Circuit's reasoning and thus do not render *Nayab*'s analysis unhelpful or inapplicable. *Compare id.* (distinguishing *Nayab* on the basis of its defendant's status as a "complete stranger" and the plaintiff's alleged harms beyond invasion of privacy ), *with Nayab*, 942 F.3d at 491–93 (making no mention of whether defendant was a complete stranger to plaintiff, and narrowing the "harm at issue" to "the release of highly personal information in violation of the FCRA").

With that survey of cases in mind, the court now approaches this case's standing question.

### e.   Applying *Spokeo*'s Guidance

*Spokeo* instructs courts assessing the concreteness of an intangible harm to consult both history and the judgment of Congress. 136 S. Ct. at 1549. The court first considers history, and then scans for signals from Congress.

### i.   Relationship with a Traditional Basis for Lawsuits

The court concludes that the harm alleged here—invasion of privacy from an unauthorized credit report inquiry—"has a close relationship to a harm" or harms that served as a traditional basis for lawsuits. *Spokeo, Inc.*, 136 S. Ct. at 1549. "The harm attending a violation of § 1681b(f)(1) of the FCRA is closely related to—if not the same as—a harm that has

traditionally been regarded as providing a basis for a lawsuit:  intrusion upon seclusion (one form

of the tort of invasion of privacy)."  *Nayab*, 942 F.3d at 491 (first citing *Spokeo, Inc.*, 136 S. Ct.

at 1549; then citing Restatement (Second) of Torts § 652B, cmt. a (1977)); *see also Heagerty*,

447 F. Supp. 3d at 1337 ("Accessing a consumer report without a permissible purpose would be

similar to . . . common law torts . . . such as . . . intrusion upon seclusion (in this case, intrusion

on financial information).  Of particular relevance here, the tort of intrusion has been applied to

cases where a defendant has illegitimately accessed personal or confidential information."

(citations omitted)).

     Defendant cites cases that have reached the opposite conclusion.  For example, *Oneal*

held "that the common law tort tradition d[id] not support a finding of concreteness" because

"plaintiff ha[d] alleged neither public dissemination of his credit information nor conduct highly

offensive to a reasonable person—one of which is always an essential element of a cause of

action for invasion of privacy" and "the public disclosure and intrusion upon seclusion cases

plaintiff cites are distinguishable" because the "public dissemination of private information . . .

and the outrage that accompanies conduct highly offensive to a reasonable person . . . are

intangible injuries of a far more concrete character than a soft pull of a credit report."  *Oneal*,

2018 WL 1352519, at *9 (internal citations omitted).[4]  The Ninth Circuit disagrees, reasoning in

*Nayab* that "the release of highly personal information in violation of the FCRA" "is highly

offensive and is not trivial because a credit report can contain highly personal information."

---

[4]    *Oneal* characterizes its conclusion that a FCRA claim alleging the harm of invasion of privacy is
alone insufficient for an injury-in-fact as placing its court among a "majority of courts to address the
question . . . ."  *Oneal v. First Tenn. Bank*, No. 4:17-CV-3-TAV-SKL, 2018 WL 1352519, at *10 (E.D.
Tenn. Mar. 15, 2018).  Given the cases decided since *Oneal* that have concluded differently, the court
finds that, while disagreement across the federal courts persists, it cannot conclude that the split still leans
in favor of cases like *Oneal* as it may have in early 2018 when that case was decided.  If anything, the
balance now may tilt the other way.

*Nayab*, 942 F.3d at 491–92; *cf. Phillips v. Grendahl*, 312 F.3d 357, 372 (8th Cir. 2002),

*abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ("Of the

information that might be private, none was of a nature that would render its discovery highly

offensive to a reasonable person.").

 Here, plaintiff alleges that after his account was closed in 2009, "Defendant used or

obtained [plaintiff's] Experian credit report" on 14 occasions from 2017–2018 despite "no

permissible purpose to obtain or use" and "no lawful reason to 'review' his consumer report."

Doc. 26 (Second Am. Compl. ¶¶ 17–18, 22–23). As in *Nayab*, plaintiff here alleges defendant

accessed his credit report without a permissible purpose, thus invading his privacy. *Id.* at 3, 8

(Second Am. Compl. ¶¶ 18, 22–23, 56).

 Moreover, *Spokeo* does not demand a perfect fit with historical common law, but rather

"a close relationship[.]" *Spokeo, Inc.*, 136 S. Ct. at 1549; *see also Susinno v. Work Out World*

*Inc.*, 862 F.3d 346, 352 (3d Cir. 2017);[5] *Perrill*, 205 F. Supp. 3d at 874 n.1 (rejecting defendant's

argument that since elements of an intrusion upon seclusion claim differ from the alleged FCRA

violation, an invasion of privacy injury is dissimilar from the harm forming the basis of an

intrusion upon seclusion claim because *Spokeo* "does not require the elements to be identical.").

The court finds that here, plaintiff alleges harm having a close relationship to invasions of

privacy that served as a traditional basis for suit and thus scores a point in favor of concreteness.

---

[5] In *Susinno*, the Third Circuit applied *Spokeo*'s history prong to the Telephone Consumer
Protection Act (TCPA) and compared the statute's targeted harms to those protected against by the
common law tort of "intrusion upon seclusion." 862 F.3d at 352. The court held that plaintiff had
standing to sue under a statute prohibiting conduct that "traditionally would provide no cause of action"
for Intrusion upon Seclusion because Congress "sought to protect the same interests implicated in the
traditional common law cause of action." *Id.* (citing Restatement (Second) of Torts § 652B, cmt. d
(1977)). "Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA.
Rather, it elevated a harm that, while 'previously inadequate in law,' was of the same character of
previously existing 'legally cognizable injuries.' *Spokeo* addressed, and approved, such a choice by
Congress." *Id.* (citation omitted).

Having consulted history, the court must next consider *Spokeo*'s second source of instruction when evaluating the concreteness of an intangible harm:  the legislative branch.  136 S. Ct. at 1549.

### ii.     The Judgment of Congress

*Spokeo* also directs courts to consider Congress's judgment about the question "whether an intangible harm constitutes injury in fact" as "instructive and important" because the legislative branch "is well positioned to identify intangible harms that meet minimum Article III requirements . . . ."  *Spokeo, Inc.*, 136 S. Ct. at 1549.  "Congress enacted FCRA in 1970 to protect consumer privacy and to ensure fair and accurate credit reporting."  *Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Com. Servs., Inc.*, 537 F.3d 1184, 1187 (10th Cir. 2008) (first citing 15 U.S.C. § 1681(a); then citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)).  "In order to insure that credit reporting agencies would act with 'fairness, impartiality, and a respect for the consumer's right to privacy,' Congress provided that a reporting agency could furnish reports only in certain specified circumstances and in no other."  *Clark v. State Farm Fire & Cas. Ins. Co.*, 54 F.3d 669, 671 (10th Cir. 1995) (quoting 15 U.S.C. § 1681(a)(4)); *see also Nayab*, 942 F.3d at 492 ("In passing the FCRA, Congress specifically recognized the 'elaborate mechanism [] developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers' and the 'need to insure that consumer reporting agencies exercise their *grave responsibilities* with fairness, impartiality, and a respect for the *consumer's right to privacy*.'"  (quoting 15 U.S.C. § 1681 (emphasis added))).

Again, some courts disagree.  For example, *Oneal* reasoned that "although one of Congress's central concerns in enacting the FCRA was consumer privacy, the end goal was to ensure 'the confidentiality, accuracy, relevancy, and proper utilization' of credit information—

not to protect privacy as an abstract, intellectual concept." *Oneal*, 2018 WL 1352519, at *10 (first quoting § 1681(b); then citing *Jones v. Federated Fin. Res. Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). The court finds this argument unpersuasive, given that "[o]ne of the primary protections within the FCRA—and the one most relevant here—is the requirement that users have a permissible purpose when they obtain or use a consumer report. To this end, Congress included in the Act an elaborate set of interlocking provisions that restrict the access to and dissemination of consumer reports." *Heagerty*, 447 F. Supp. 3d at 1337 (internal citations omitted); *see also Browner*, 355 F. Supp. 3d at 735 ("[T]he court has no doubt that Congress intended to protect a consumer's credit information to the greatest extent practicable and to prohibit access where there was no legitimate business or statutorily-allowed purpose."). "By providing for statutory damages and '[b]y providing a private cause of action for violations of [Sections 1681f and 1681q], Congress has recognized the harm such violations cause, thereby articulating a "chain[] of causation that will give rise to a case or controversy."'" *Nayab*, 942 F.3d at 492–93 (quoting *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (brackets in original) (quoting *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)))). The court thus concludes that Congress, in passing the FCRA, identified and elevated certain intangible harms that meet the concreteness requirement necessary to remain within the bounds of Article III.

Here, the harm plaintiff alleges is not a "bare" procedural harm, but rather an invasion of privacy that may be intangible, yet it resembles a traditional basis for suit and represents a harm that the FCRA seeks to shield against by carefully prohibiting the conduct plaintiff alleges. Under *Spokeo*, plaintiff's alleged harm is thus concrete, particularized, and no impediment to

finding that plaintiff has standing under Article III.  The court thus rejects defendant's motion to dismiss for lack of subject matter jurisdiction based upon its standing challenge.

### B.  Failure to State a Claim

Satisfied that plaintiff has standing under Article III necessary to confer subject matter jurisdiction over this dispute, the court now considers defendant's argument that the Second Amended Complaint deserves dismissal because it fails to state a claim under the FCRA.

The gist of defendant's initial argument is that plaintiff has failed to allege any facts ruling out certain permissible purposes for acquiring a consumer report, and thus fails to plead facts capable of supporting a plausible inference or finding that defendant violated the FCRA by acting without a permissible statutory purpose.  *See* Doc. 29 at 4–6.  Plaintiff contends that his pleading addresses "the lack of all of the permissible purposes" and satisfies "the low burden to allege a viable claim under FCRA § 1681b(f)."  Doc. 37 at 6–7 (citation omitted).

The court, in the following, recites the legal standard governing defendant's motion and then applies it to plaintiff's FCRA claims.

### 1.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "'will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the factual allegations in the complaint are true.  *Id.* (citing *Twombly*, 550 U.S. at

555).  But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When evaluating a motion to dismiss under Rule 12(b)(6), the court may consider the complaint itself along with any attached exhibits and documents incorporated into it by reference.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); then citing *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007); then citing *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 964–65 (10th Cir. 1994)).  A court also "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and

the parties do not dispute the documents' authenticity.'"  *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation omitted)).

But when a court considers a motion to dismiss a complaint to which other writings or exhibits are attached and incorporated by reference, the exhibit's "legal effect is to be determined by its terms rather than by the allegations of the pleader."  *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir. 1967) (citation and internal quotation marks omitted); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002) ("[I]n deciding a 12(b)(6) motion, the legal effect of the [attached documents] are determined by the [documents] themselves rather than by allegations in the complaint." (citing *Droppleman*, 372 F.2d at 250)).  So, while the court accepts all well-pleaded allegations as true and draws all reasonable inferences in plaintiff's favor, when the Second Amended Complaint's allegations conflict with the content of the attached exhibit, the exhibit controls.  *See Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972) ("[W]e need not accept as true . . . allegations of fact that are at variance with the express terms of an instrument attached to the complaint as an exhibit and made a part thereof" (citing *Olpin v. Ideal Nat'l Ins. Co.*, 419 F.2d 1250, 1255 (10th Cir. 1969))).

## 2. Discussion

Section 1681b(f) "prohibits obtaining a consumer report unless it 'is obtained for a purpose for which the consumer report is authorized to be furnished under [§ 1681b].'"  *Sartori v. Susan C. Little & Assocs., P.A.*, 571 F. App'x 677, 681 n.4 (10th Cir. 2014) (quoting 15 U.S.C. § 1681b(f)(1)).  To show "a violation of the FCRA for obtaining a credit report without a permissible purpose, a plaintiff must prove that (1) there was a consumer report; (2) the defendant used or obtained it; (3) the defendant did so without a permissible statutory purpose; and (4) the defendant was negligent or willful in doing so."  *Baker v. Ward*, No. CIV-20-006-R,

2020 WL 2104952, at *3 (W.D. Okla. May 1, 2020) (citing *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002) *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

Defendant's memorandum (Doc. 29) takes aim at the third element:  absence of a permissible purpose.  Defendant asserts that "because an entity is legally authorized to access a consumer's credit report for a wide variety of reasons, to survive a motion to dismiss, a plaintiff must 'aver sufficient *facts* to establish to a plausible degree that Defendant obtained the credit reports for an impermissible purpose.'"  Doc. 29 at 4 (quoting *Perez v. Portfolio Recovery Assocs., LLC*, No. CIV. 12-1603 JAG, 2012 WL 5373448, at *2 (D.P.R. Oct. 30, 2012) (emphasis added)).  Defendant cites many cases from other district courts to stand for the rules that (1) bare allegations that defendant lacked a permissible purpose for obtaining a credit report, without more, are insufficient,[6] and (2) merely reciting each permissible circumstance and

---

[6]     *Thomas v. Fin. Recovery Servs.*, No. EDCV 12-1339 PSG OPX, 2013 WL 387968, at *4–5 (C.D. Cal. Jan. 31, 2013) (granting defendant's motion for judgment on the pleadings where plaintiff made only the conclusory allegation that defendant lacked a permissible purpose to request her credit report and offers only legal conclusions that each of the possible permissible circumstances did not apply); *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-CV-00337-M, 2017 WL 10486988, at *4 (N.D. Tex. Nov. 2, 2017) (noting that "[c]ourts have rejected allegations, similar to Plaintiff's, merely concluding that a defendant did not have a permissible purpose" and holding that plaintiff failed to state a FCRA claim for failure to allege sufficiently defendant's lack of permissible purpose); *Betz v. Jefferson Cap. Sys., LLC*, 68 F. Supp. 3d 130, 133 (D.D.C. 2014) (plaintiff's conclusory allegations that defendant obtained his credit report "without a permissible purpose" fail to state a claim); *Perez*, 2012 WL 5373448, at *2 (Plaintiff's allegation that defendant has been "obtaining and furnishing information from the Plaintiff's Transunion consumer credit report with no permissible purpose" is "nothing more than a threadbare recital of the elements of a cause of action." (internal quotation marks omitted)); *Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 435 (D. Del. 2012) ("Plaintiff's conclusory allegation that Northland 'accessed Plaintiff['s] TransUnion consumer report without a permissible purpose'" does not state a claim.); *Flury v. CSC Credit Servs.*, No. CV-11-1166-PHX-FJM, 2012 WL 300726, at *1 (D. Ariz. Feb. 1, 2012) ("a single conclusory allegation that [plaintiff's] credit report was 'obtained without a permissible purpose'" fails to state a FCRA claim); *DeMaestri v. Verifacts Inc.*, No. 11-CV-02430-WYD-KMT, 2012 WL 1192758, at *7 (D. Colo. Mar. 16, 2012) ("Plaintiff[] makes only formulaic allegations, devoid of any factual enhancement, that Defendant 'willfully violated [Section 1681b] by obtaining Plaintiff's consumer report without a permissible purpose[.]'" (citation to record omitted)).

denying it applies is similarly inadequate.[7]  *Id.* at 4–5 (citations omitted).  Defendant argues that

plaintiff fails to satisfy these pleading requirements because the "only facts [plaintiff] has alleged

are that [defendant] obtained his credit report, and then he summarily asserts that only *some* of

the reasons that would have permitted that access don't exist."  *See id.* at 6 (citing Doc. 26 at 4

(Second Am. Compl. ¶¶ 24–27)).  Defendant cites *Thomas*, 2013 WL 387968, at *4, for the rule

that "bare allegations that the defendant did not have a permissible purpose for obtaining a credit

report, without more, are insufficient" and reasons that "if it's not enough to allege facts

establishing that every permissible purpose doesn't exist, Plaintiff certainly cannot state a viable

Section 1681b claim by alleging that only some of them don't exist."  *Id.* at 6–7 (internal citation

omitted) (citing *Jones*, 2017 WL 490902, at *7).  Defendant emphasizes, "Plaintiff's failure to

account for and address" defendant's right to make inquires like those at issue here to extend

plaintiff a firm credit offer.  *Id.* at 7.  Defendant asserts that "Plaintiff's Experian credit report

clearly states that the . . . inquires [by defendant] may have been made by a creditor 'who

want[s] to offer you preapproved credit[.]'"  *Id.* at 9 (first quoting Doc. 34; then citing *Celestine

v. Capital One*, 741 F. App'x 712, 715 (11th Cir. 2018)).

Plaintiff rejects the suggestion that he alleges only that *some* permissible purposes do not

apply here.  Doc. 37 at 7 (Mem. in Opp.) (asserting that the Second Amended Complaint

"addresses the lack of all of the permissible purposes" (citation omitted)).  To support his

argument, plaintiff highlights two parts of his pleading.  *Id.* (citing Doc. 26 at 2 (Second Am.

Compl. ¶¶ 12–13)).  Paragraph 12 alleges, "Plaintiff once had a debtor-creditor relationship with

Defendant[,]" and ¶ 13 alleges that "Plaintiff's only relationship with Defendant was comprised

---

[7]        *Thomas*, 2013 WL 387968, at *4–5; *Perez*, 2012 WL 5373448, at *2–3; *Jones v. Best Serv. Co.*,
No. CV 14-9872 SS, 2017 WL 490902, at *8 (C.D. Cal. Feb. 6, 2017), *aff'd*, 700 F. App'x 580 (9th Cir.
2017); *Davis v. Schwab*, No. 4:12-cv-740-A, 2013 WL 704332, at *3 (N.D. Tex. Feb. 26, 2013).

of a now-closed credit card account . . . ."  Doc. 26 at 2 (Second Am. Compl. ¶¶ 12–13).

Plaintiff asserts that defendant's pulls of his consumer reports occurred "after any right to do so

had passed" because they happened "long after the June 2009 termination of any debtor/creditor

relationship[.]"  Doc. 37 at 7 (citing Doc. 26 at 2 (Second Am. Compl. ¶ 15)); *see also id.* at 7

(deducing the lack of a permissible purpose from the absence of existing account or plaintiff's

involvement in a credit transaction).  Plaintiff rests this assertion on the purported rule that "a

creditor's right to access 'depends on the existence of a debtor/creditor relationship.'"  *Id.*

(quoting *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 393 (E.D. Pa. 2017)).

Plaintiff appears to reason, by syllogism, that given *Hoffmann*, his lack of any "account with

Defendant after June 2009" and thus an absence of debtor/creditor relationship means "that there

was no permissible purpose to pull his report" in 2017–2018.  *Id.* (citing Doc. 26 at 2, 4 (Second

Am. Compl. ¶¶ 15, 29)).

     But defendant replies that plaintiff misreads *Hoffmann*.  *See* Doc. 39 at 4 n.2 ("Plaintiff's

partial quotation . . . is entirely misplaced, if not misleading.").  Defendant persuasively argues

that plaintiff interprets *Hoffmann* too broadly.  *See id.*  "After explaining the specific reasons

Wells Fargo gave for accessing plaintiff's credit report, the court in *Hoffman* noted that, based

the reasons Wells Fargo gave, *its* 'right of access to Plaintiff's credit report depends on the

existence of a debtor/creditor relationship'" rather than holding that "*a* 'creditor's right of

access' is dependent on 'a debtor/creditor relationship.'"  *Id.* (first quoting *Hoffman*, 242 F.

Supp. 3d at 393; then citing Doc. 37 at 7) (emphasis added).

     The court agrees with defendant.  Plaintiff overstates the heat of *Hoffmann*'s fastball—

the case will not support the rule that plaintiff attributes to it.  Moreover, defendant cites cases

saying just the opposite of plaintiff's suggested reading of § 1681b.  *See* Doc. 39 at 3–4 (first

quoting *Perretta v. Cap. Acquisitions & Mgmt. Co.*, No. C-02-05561 RMW, 2003 WL 21383757, at *5 & n.7 (N.D. Cal. May 5, 2003) (granting defendant's motion to dismiss plaintiff's FCRA claim and observing that "contrary to plaintiff's assertion, section 1681b does not appear to require the existence of a debtor-creditor relationship for a party to lawfully acquire a consumer report."); then citing *Tuck v. Portfolio Recovery Assocs., L.L.C.*, No. 19-CV-1270-CAB-AHG, 2019 WL 5212392, at *6 (S.D. Cal. Oct. 16, 2019) (dismissing plaintiff's § 1681b claims because "Plaintiff fails to allege sufficient facts to support a reasonable inference that any Defendant obtained his consumer report for an impermissible purpose" where "Plaintiff merely alleges the Defendants did not have a permissible purpose because he never had any business dealings or accounts with defendants.").  Unlike *Hoffmann*, defendant's arguments here do not foreclose the possibility of permissible purposes unrelated to an account.  *Compare* Doc. 29 at 8–9 (discussing credit offers), *with Hoffman*, 242 F. Supp. 3d at 393 (discussing account reviews and credit transactions in connection with an account).  Here, defendant's right to access plaintiff's credit report thus does not depend on the existence of a debtor/creditor relationship.  And since a creditor's right to access a credit report does not necessarily depend on the existence of a debtor/creditor relationship, the absence of such a relationship does not rule out the possibility of a permissible purpose.  *See Perretta*, 2003 WL 21383757, at *5 n.7 (Section 1681b "does not appear to require the existence of a debtor-creditor relationship for a party to lawfully acquire a consumer report.").

This clarification of *Hoffmann* voids the major premise of plaintiff's syllogism.  *See* Doc. 37 at 6–7.  So, the allegations in ¶¶ 12–13, 22, 24 do not address "the lack of all of the permissible purposes" as plaintiff suggests they do.  *See id.* at 6 (citing Doc. 26 (Second. Am. Compl. ¶¶ 22, 24)); *id.* at 7 (citing Doc. 26 (Second Am. Compl. ¶¶ 12–13)).  With this

conclusion, the court now looks elsewhere in plaintiff's pleading for alleged facts that might support a reasonable inference that defendant acted without a permissible purpose.

Plaintiff alleges that he "is informed and believes that the Experian consumer report inquiries . . . were certified by Defendant to be for the purpose of an 'account review[,]'" Doc. 26 at 3 (Second Am. Compl. ¶ 20), and argues that defendant's inquiries were thus not for some other purpose that may be permissible, Doc. 37 at 7 & n.1; *see also* Doc. 26 at 3 (Second Am. Compl. ¶¶ 20–23). Plaintiff certainly is entitled to his beliefs, but the cases require more. They held that plaintiff must assert facts to support this belief. *See Cunningham*, 2017 WL 10486988, at *4 ("Although plaintiff may subjectively believe that defendant obtained his credit report for some impermissible purpose, 'he must support that belief with some factual allegations.'" (quoting *Betz*, 68 F. Supp. 3d at 133)). Plaintiff asserts that no "evidence or contention has been raised to suggest the Pulls were for any promotional, insurance or employment purpose or related to any of the other purposes set out under FCRA §1681b(a)(3)(A)." *See* Doc. 37 at 7 n.1 (citing Doc. 26 at 3–4 (Second Am. Compl. ¶¶ 19, 24, 26–27)). But plaintiff misapprehends the burden he must shoulder at the pleading stage: he must allege facts capable of supporting a finding or inference that defendant pulled his credit report without a permissible purpose. Alleging the absence of facts that could support an opposite inference is not the same. *See United States v. Acosta-Gallardo*, 656 F.3d 1109, 1117–18 (10th Cir. 2011) ("absence of evidence is not evidence of absence." (citation and quotation marks omitted)).

Plaintiff does allege that the inquiries at issue "were not labeled as promotional pulls by Experian." Doc. 26 at 3 (Second Am. Compl. ¶ 19). The court construes plaintiff's pleading and response to the motion to dismiss as asserting that his Experian report's lack of a notation designating defendant's inquiries as promotional supports an inference that those inquiries

lacked a permissible promotional purpose. *See id.* (Second Am. Compl. ¶¶ 19–20); Doc. 37 at 7 n.1 (citations to record omitted). But, as defendant points out, *see* Doc. 29 at 9, the actual Experian report conflicts with plaintiff's allegation about its content*, see* Doc. 34 at 3 (explaining that the inquiries at issue here may have been from creditors who wanted to offer plaintiff preapproved credit). While plaintiff's Experian credit history record (Doc. 34) does not designate defendant's inquiries as *definitely* promotional, the document makes clear that they were made by a creditor "with a permissible purpose, such as" offers of credit or employment, among others. *See* Doc. 34 at 3. Plaintiff's allegation in ¶ 19 is thus at variance with the Experian report.[8] Since the court treats the Experian report as an exhibit to the Second Amended Complaint, the report controls. *See Jackson*, 465 F.2d at 1390 (noting that the court "need not accept as true . . . allegations of fact that are at variance with the express terms of an instrument attached to the complaint as an exhibit and made a part thereof" (citation omitted)).

Given the actual content of that document, plaintiff's allegation about its lack of labeling designating the inquiries as promotional fails to support a plausible inference that defendant's inquiries lacked a permissible purpose. *See Celestine v. Capital One*, 741 F. App'x 712, 715 (11th Cir. 2018) (affirming dismissal of plaintiff's second amended complaint and holding that the lower court "did not err in finding that [plaintiff] failed to adequately allege an impermissible purpose in violation of the FCRA, because the credit reports submitted by [plaintiff] with his

---

[8]      Plaintiff did not attach the Experian report to his Second Amended Complaint, but he references the document in his pleading, *see, e.g.*, Doc. 26 at 3–5 (Second Am. Compl. ¶¶ 18–20, 22–28, 31, 36), the report is central to his claims, and the parties do not dispute the report's authenticity. Moreover, plaintiff did not object to defendant's assertion that the court properly may consider the Experian report when ruling on the motion to dismiss. *See generally* Doc. 37; *see also* Doc. 28 at 9 n.2 (explaining communication between the parties about the filing of this exhibit under seal and asserting that the court properly may consider it when ruling on a motion to dismiss (citing *Jacobsen*, 287 F.3d at 941–42)).

complaint shows that they were promotional inquiries that did not affect his credit rating and were using his consumer information to provide a 'firm offer of credit.'").

When evaluating defendant's motion, the court must determine "whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC*, 555 F.3d at 1192 (citation omitted). Plaintiff acknowledges that he "must allege . . . that the defendant used or obtained his credit report for an impermissible purpose," but he leaves unaddressed a permissible purpose for defendant's conduct as shown on plaintiff's credit history report: a permissible credit offer. Doc. 37 at 6. And he alleges no other facts from which to infer that defendant acted with an impermissible purpose. Plaintiff thus fails to allege facts that, if proved true, would permit a reasonable factfinder to infer that defendant acted without a permissible purpose. Without facts supporting that element of his cause of action, plaintiff's Second Amended Complaint fails to plead a plausible (and not merely possible) FCRA violation. The court thus need not consider defendant's alternative reasons why plaintiff fails to state a claim.

The court concludes that the Second Amended Complaint fails to state a claim under the FCRA and thus grants defendant's motion to dismiss under Rule 12(b)(6).

## III.   Conclusion

The court concludes that plaintiff alleges harm sufficiently concrete to enjoy standing under Article III to bring his FCRA claim. The court thus denies defendant's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. But plaintiff has failed to allege facts sufficient to allow a reasonable inference that he is entitled to relief under the FCRA. The court thus grants defendant's motion to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6). Dismissal renders moot defendant's motion to dismiss plaintiff's

class claims for lack of personal jurisdiction and motion to strike plaintiff's class allegations. The court thus dismisses those motions as moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, Dismiss Class Claims for Lack of Personal Jurisdiction, and Strike Plaintiff's Class Allegations (Doc. 28) is granted in part and denied in part.  The Motion to Dismiss for lack of subject matter jurisdiction is denied.  The Motion to Dismiss the Second Amended Complaint for failure to state a claim is granted.  The Motion to Dismiss plaintiff's class claims for lack of personal jurisdiction is dismissed as moot.  The Motion to Strike plaintiff's class allegations is dismissed as moot.

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

28